## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH BOYKINS, et al | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.  11-6126 |
| CLBW ASSOCIATES, et al | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                  December 11, 2013

Pending before the Court are four Motions for Summary Judgment by Defendants Gulph

Creek Partners L.P. and Gulph Creek Associates, Inc. (collectively "Gulph Creek").  For the

following reasons, each of Defendant Gulph Creek's Motions is granted and judgment shall be

entered in favor of Gulph Creek Partners, L.P. and Gulph Creek Associates, Inc. and against

Plaintiffs Ralph Boykins, Michael Fuller, Gloria Holland, and Denise Taliaferro.

## I.      FACTUAL AND PROCEDURAL HISTORY[1]

### A.      Facts pertaining to all Plaintiffs

Plaintiffs Ralph Boykins ("Boykins"), Michael Fuller ("Fuller"), Gloria Holland

("Holland"), and Denise Taliaferro ("Taliaferro) are each residents of Pennsylvania.  (Compl. ¶¶

4–8.)  Defendant Gulph Creek is a hotel management company that operates hotels in

Pennsylvania, New Jersey, and Maryland, with its principal place of business in Pennsylvania.

---

[1] The statement of facts is compiled from a review of the parties' briefs and the evidence
submitted in conjunction with those briefs. To the extent the parties allege a fact that is
unsupported by evidence, the Court does not include it in the recitation of facts.

(Defs.' Mot. Summ. J. against Taliaferro, Ex. 3, Dep. of Amy Gancasz, ("Gancasz Dep."), 11:8–9, 14:7–17, Jan. 31, 2013.)

Plaintiffs were each employed at the hotel property located at the corner of Presidential Boulevard and City Avenue on the border between Philadelphia and Montgomery County, Pennsylvania ("the Hotel").  (Compl. ¶¶ 62, 69, 78, 88; Defs.' Mot. Summ. J. against Taliaferro, Ex. 17, Crowne Plaza-Philadelphia City Avenue 2009 Marketing Plan ("Marketing Plan"), 3.)  Prior to 2008, Plaintiffs each worked at the Hotel while it operated as a Holiday Inn.  (Compl. ¶¶ 34, 62, 69, 78, 88.)  In 2008, the Hotel was re-branded from a Holiday Inn to a Crowne Plaza, in a move that constituted moving from "a middle-class family brand to a business person brand."  (Id. ¶ 34; Defs.' Mot. Summ. J. against Taliaferro, Ex. 6, Dep. of Kurt Strauss ("Strauss Dep."), 47:16–17, Mar. 21, 2013.)  As part of that transition, on May 4, 2009, the ownership group of the Hotel entered into a contract with Defendant Gulph Creek to manage and operate the Hotel.  (Defs.' Mot. Summ. J. against Taliaferro, Ex. 18, "Management Agreement.")  When Gulph Creek assumed management of the Hotel, it replaced Kurt Strauss with Russell Peskin as the general manager of the Hotel.  (Defs.' Mot. Summ. J. against Taliaferro, Ex. 2, Dep. of Russell Peskin ("Peskin Dep."), 37:7–24, April 4, 2013.)  Beginning in May 2009, Defendant Gulph Creek conducted performance evaluations of the personnel then working at the Hotel to determine whether they would be kept on as employees of Gulph Creek.  (Id.)

**B.     Facts pertaining to Plaintiff Ralph Boykins**

Plaintiff Ralph Boykins, who is African-American, began working for the Hotel in 2007 as a bellman.  (Defs.' Mot. Summ. J. against Boykins, Ex. 1, Dep. of Ralph Boykins, Jan. 22, 2013 ("Boykins Dep.") 104:22–105:5.)   In February 2008, he became a concierge.  (Boykins Dep. 125:6–8.)  After a year as a concierge, and after the Hotel's transition from a Holiday Inn to

a Crowne Plaza, Boykins received a promotion to become the Hotel's restaurant manager in March 2009.  (Defs.' Mot. Summ J. against Boykins, Ex. 24, Restaurant Manager Promotion Letter.)  As restaurant manager, Boykins was responsible for overseeing the restaurant's staff and bartenders as well as assisting with the Hotel's banquet, catering, and other food and beverage offerings.  (Boykins Dep. 69:5–71:24.)  Boykins remained the Hotel's restaurant manager and continued to perform the same duties after Gulph Creek assumed management of the Hotel in May 2009.  (Id. at 181:15–23.)  Gulph Creek retained Boykins as an employee upon his submission of a formal application on August 19, 2009.  (Id. at 178:15–179:18.)

International Hotel Group (IHG), parent company of Crowne Plaza, asked guests of the Hotel to rate their restaurant dining experience in guest satisfaction surveys.  (Defs.' Mot. Summ. J. against Boykins, Ex. 26, Guest Satisfaction Scores.)  From the time Gulph Creek assumed management of the Hotel in May 2009 through October 2009, the average restaurant dining experience scores ranged between 50.00 and 69.23 on a scale of 100.  (Id.)  IHG's official minimum acceptable score for restaurant dining experience is 84.00.  (Defs.' Mot. Summ. J. against Boykins, Ex. 27, Letter from Derek Sylvester on Nov. 17, 2009 ("Sylvester Letter").)  Additionally, Gulph Creek documented numerous criticisms it had of Boykins's performance in a series of "Disciplinary Notice Forms."  (Defs.' Mot. Summ. J. against Boykins, Ex. 33, Disciplinary Review Forms.)  In October 2009, Gulph Creek general manager Peskin decided to replace Boykins and begin searching for a restaurant manager with more experience.  (Peskin Dep. 78:18–22.)

On December 4, 2009, Gulph Creek hired Adam Friedman, who is white, to be its new restaurant manager.  (Defs.' Mot. Summ. J. against Boykins, Ex. 19, Crowne Plaza Management Directory.)  General manager Peskin testified that he hired Friedman in part because he had

extensive food and beverage experience, including managing restaurants in hotels.  (Peskin Dep. 82:19–21.)  On or about Friedman's first day, Gulph Creek terminated Boykins's employment. (Boykins Dep. at 235:5–236:17.)  However, Gulph Creek also terminated Friedman on that date when it was alleged that he "groped one of the servers at the hotel."  (Defs.' Mot. Summ. J. against Boykins, Ex. 4, Deposition of Aditya Maini, ("Maini Dep.") 18:13–20, Feb. 5, 2013; Peskin Dep. 80:11–14.)

At that time, Gulph Creek re-advertised the position, seeking a candidate with "[a]t least one year supervisory position held in restaurant or hotel[.]"  (Defs.' Mot. Summ. J. against Boykins, Ex. 30, Restaurant Manager Advertisement.)  On January 11, 2010, Gulph Creek hired Jeffrey Webb, who is African-American, with "more than 15 years experience in full service restaurants and hotels."  (Defs.' Mot. Summ. J. against Boykins, Ex. 32, Jeffrey Webb Resume; Peskin Dep. 92:9–14.)

## C.      Facts pertaining to Plaintiff Michael Fuller

Plaintiff Michael Fuller, who is African-American, began working at the Hotel in 2002 as a security officer.  (Defs.' Mot. Summ. J. against Fuller, Ex. 1, Deposition of Michael Fuller, ("Fuller Dep."), 59:22–61:8, Jan. 18, 2013.)  Prior to his employment at the Hotel, Fuller worked at one time for the Philadelphia Private Police Force.  (Id. at 47:18–49:6.)  Fuller was promoted to be a security supervisor in 2004, and, in 2006, he was promoted to the position of director of security.  (Id. at 61:4–8.)  As director of security, Fuller was responsible for hiring, training, and supervising a team of security officers.  (Id. at 61:13–63:15.)  Fuller remained the Hotel's director of security and continued to perform the same duties after Gulph Creek assumed management of the Hotel in May 2009.  (Id. at 156:5–6.)  Gulph Creek retained Fuller as an

employee upon his submission of a formal application on August 18, 2009.  (Defs.' Mot. Summ.

J. against Fuller, Ex. 21, Fuller Application for Employment ("Fuller Application").)

From the time Gulph Creek assumed management of the Hotel in May 2009 through

December 2009, the Hotel received many reports from guests of thefts of their personal property

and break-ins into their vehicles.  In July 2009, a guest reported that "another guest had their

[car] broken into, and a second car was set on fire[.]" (Defs.' Mot. Summ. J. against Fuller, Ex.

26, Online Guest Feedback Forms.)  Also in July 2009, another guest informed the Hotel that

"my GPS device got stolen in the parking lot[.]"  (Id.)  In October 2009, a guest relayed to IHG

that a $400 dress had been stolen from her room.  (Defs.' Mot. Summ. J. against Fuller, Ex. 29,

E-mail from Guest.)  Oftentimes the security department did not document these incidents and, if

it did, it did not report the incidents to the Hotel's insurance company.  (Peskin Dep. 207:20–23;

Maini Dep. 45:5–17.)  Finally, in November 2009, three iPods were stolen from the Hotel's

housekeeping department and a television was stolen from the Hotel's engineering department.

(Peskin Dep. 195:3–196:1; Fuller Dep. 160:7–171:19.)  Gulph Creek documented numerous

criticisms it had of Fuller's performance in a "Disciplinary Notice Form."  (Defs.' Mot. Summ. J.

against Fuller, Ex. 30, Disciplinary Notice Form.)

On December 7, 2009, Gulph Creek began to search for someone to replace Fuller as

director of security for the Hotel by placing an advertisement on a jobs website seeking

applications.  (Peskin Dep. 231:15–232:6.)  Gulph Creek sought candidates that had "[a]t least 5

year[s'] Law Enforcement" experience.  (Defs.' Mot. Summ. J., Ex. 24, Director of Security Job

Descrption.)  On December 16, 2009, Gulph Creek hired John Navarez, a retired FBI agent, as

its new director of security.  (Defs. Mot. Summ. J. against Fuller, Ex. 35, Offer Letter to John

Navarez.)  On December 18, 2009, Gulph Creek terminated Fuller's employment.  (Defs.' Mot. Summ. J., Ex. 30, Fuller Termination Notice.)

**D.     Facts pertaining to Plaintiff Gloria Holland**

Plaintiff Gloria Holland, who is African-American, began working at the Hotel in 1989 as guest service supervisor.  (Defs.' Mot. Summ. J. against Holland, Ex. 1, Dep. of Gloria Holland, ("Holland Dep."), 52:23–53:20, Mar. 18, 2013.)  About two years later, Holland became a front office manager.  (Id.)  In 1993, Holland made a transition into the Hotel's accounts payable department, and, about one year later, she became an accounting manager.  (Id. at 53:18–54:7.)  As an accounting manager, Holland was responsible for ensuring that reports of the Hotel's revenues were accurate.  (Id. at 56:20–58:5.)  After Gulph Creek assumed management of the Hotel in May 2009, Gulph Creek retained Holland as an employee upon her submission of a formal application on August 18, 2009.  (Defs.' Mot. Summ. J. against Holland, Ex. 21, Holland Application for Employment ("Holland Application").)

When Gulph Creek assumed control of the Hotel in 2009, Gulph Creek transferred much of the Hotel's accounting work from Holland and the Hotel's accounting department to Gulph Creek's own corporate accounting department, including responsibility for "profit and loss statements," "balance sheets," payment of bills, and receipt of invoices.  (Peskin Dep. 52:11–18, 59:19–23; Holland Dep. 68:19–69:18.)  In light of this transfer of duties from the Hotel accounting department to Gulph Creek's corporate accounting department, by the end of May 2009, Gulph Creek had eliminated every position in the Hotel's accounting department except Holland's.  (Holland Dep. 84:9–87:2.)

From the time Gulph Creek assumed management of the Hotel in May 2009 through October 2009, Gulph Creek documented numerous criticisms it had of Holland's performance in

a series of Disciplinary Notice Forms.  (Defs.' Mot. Summ. J. against Holland, Ex. 25, Disciplinary Notice Forms.)   In June 2009, Peskin noted that the Hotel did not have standardized procedures or efficient communication between various departments responsible for coordinating billing for the Hotel's banquet services.  (Id.)  Ultimately, after hearing little to no response from Holland, Peskin found Holland "unwilling to develop the plan" and implemented the changes himself.  (Defs.' Mot. Summ. J. against Holland, Ex. 26, Peskin-Holland e-mail correspondence; Peskin Dep. 225:14–20.)  Additionally, an audit performed by International Hotel Group found that the Hotel had $39,030 in undocumented revenue.  (Defs.' Mot. Summ. J. against Holland, Ex. 27, e-mail correspondence from IHG Auditor Lydia Louis.)  As a result of the audit's findings, IHG issued a $3,317 assessment against the Hotel.  (Id.)

Finally, Gulph Creek documented numerous instances in which Holland's co-workers complained about Holland's behavior toward them.  (Defs.' Mot. Summ. J. against Holland, Ex. 28, Holland Employee Documentation.)  These complaints centered on Holland's "unwillingness to help with tasks" and "inability to effectively communicate and work together" which "created an uncomfortable work environment" for her co-workers.  (Id.)

At some point on or before September 23, 2009, Gulph Creek advertised an open position for an "Accounting Clerk" on a jobs website.  (Defs.' Mot. Summ. J. against Holland, Ex. 29, Accounting Clerk Advertisement.)  On October 2, 2009, Gulph Creek offered the position of "Accounting Clerk" to Donna Faith, who is white.  (Defs.' Mot. Summ. J. against Holland, Ex. 30, Faith Offer Letter; Pls.' Resp. Opp'n Mot. Summ. J., Ex. 13, Dep. of Laura Williams ("Williams Dep."), 52:5–13, Jan. 29, 2013.)  Faith accepted Gulph Creek's offer, and on October 20, 2009, Gulph Creek terminated Holland's employment at the Hotel.  (Defs.' Mot. Summ. J. against Holland, Ex. 32, Holland Separation Letter.)

**E.**      **Facts pertaining to Plaintiff Denise Taliaferro**

Plaintiff Denise Taliaferro, who is African-American, began working at the Hotel in 1990 as a switchboard operator.  (Defs.' Mot. Summ. J. against Taliaferro, Ex. 1, Dep. of Denise Taliaferro, ("Taliaferro Dep."), 60:15–61:11, Jan. 11, 2013.)  As a switchboard operator, Taliaferro was responsible for answering incoming phone calls to the Hotel, transferring phone calls to the proper department, and assisting callers with questions about the Hotel.  (Id.)  Beginning in 1991, Taliaferro worked for the Hotel as a "reservationist."  (Id. at 62:19–22.)  In that capacity, Taliaferro worked at the front desk and took reservations, prepared reports for staff meetings, collaborated with the sales department about group reservations, and coordinated with the housekeeping, restaurant, and security departments.  (Id. at 64:16–66:21.)  When Taliaferro began working at the Hotel, she took reservations by completing handwritten reservation cards. (Id. at 67:15–70:14.)  Years later, she took reservations by inputting reservation information into a computer.  (Id. at 70:8–14.)  By 2009, prospective guests could book their reservations themselves through online booking websites.  (Id. at 75:3–21.)

After Gulph Creek assumed management of the Hotel in May 2009, Taliaferro continued to perform the same job functions.  (Taliaferro Dep. 100:13–23.)  Gulph Creek retained Holland as an employee upon her submission of a formal application on August 19, 2009.  (Defs.' Mot. Summ. J. against Taliaferro, Ex. 23, Taliaferro Job Application.)  At the time Gulph Creek assumed control of the Hotel, it was the only Gulph Creek-operated hotel with an employee designated for the taking of reservations.  (Defs.' Mot. Summ. J. against Taliaferro, Ex. 12, Declaration of Amy Gancasz ("Gancasz Decl.") ¶ 14.)  At some point after taking control of the Hotel, Gulph Creek began to re-direct the phone calls the Hotel received from prospective guests seeking to make a reservation to IHG's central reservations office.  (Peskin Dep. 67:10–12.)

Additionally, Gulph Creek attempted to increase the use of IHG's online "Passkey" booking system for prospective guests seeking to make reservations at the Hotel.  (Id. at 67:4–7.)  On November 6, 2009, Gulph Creek sent Taliaferro a letter informing her that "effective immediately, your position as Reservations Supervisor will be eliminated due to changes in business needs" and terminated Taliaferro's employment.  (Defs.' Mot. Summ. J., Ex. 32, Taliaferro Separation Letter.)

**F.**  **Procedural History**

Plaintiffs initiated the present litigation by filing a Complaint on September 29, 2011. Plaintiffs set forth one cause of action:  that Defendants terminated Plaintiffs' employment based on their race in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981.  Defendants Gulph Creek Partners, L.P. and Gulph Creek Associates, Inc. filed Motions for Summary Judgment against each Plaintiff on July 18, 2013.  Plaintiffs filed their omnibus Response in Opposition to Motions for Summary Judgment on August 17, 2013.  Gulph Creek filed Replies to Plaintiffs' Response in Opposition as to each Plaintiff on September 6, 2013.  Gulph Creek's Motions are now ripe for review.

**II.**  **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586.  "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted."  Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

## III.    DISCUSSION

Plaintiffs bring their claims under 42 U.S.C. § 1981.  "To succeed on a Title VII or Section 1981 claim of race discrimination, a claimant must establish that he was the subject of purposeful discrimination."  Robinson v. Home Depot, Inc., No. Civ.A.06-935, 2009 WL 2960990, at *1, *15 (D.N.J. Sept. 11, 2009) (citing Weldon v. Kraft, 896 F.2d 793, 796 (3d Cir. 1990).  Where, as here, the plaintiff does not present direct evidence of discrimination, courts apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. 792, 802 (1973)).

Under the McDonnell Douglas scheme, plaintiffs alleging race-based employment discrimination must first establish a prima facie case by showing: (1) they are members of a protected class; (2) they are qualified for the position; (3) they suffered an adverse employment action; and (4) that the action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently.  Id. at 410–11; see also Boykins v. Lucent Techs., Inc., 78 F. Supp .2d 402, 409 (E.D. Pa. 2000), aff'd, 29 F. App'x 100 (3d Cir. 2000).

If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  Jones, 198 F.3d at 410.  The burden on the defendant at this juncture is "relatively light," and the defendant can satisfy it "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Id.

Once the defendant articulates such reasons, the burden reverts back to plaintiff, who must show by a preponderance of the evidence that those legitimate reasons were a pretext for discrimination.  Id.  To defeat a motion for summary judgment where a defendant has offered a legitimate, nondiscriminatory reason for an adverse employment action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. at 764.  To do so, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Id. at 765.  "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'"  Id. (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

In separate motions against each of the four Plaintiffs in this case, Gulph Creek argues that it is entitled to summary judgment because a) Plaintiffs cannot establish a prima facie case of race discrimination, and b) Plaintiffs cannot show that Gulph Creek's legitimate, nondiscriminatory reasons for terminating their employment are a pretext for intentional discrimination. The Court will address each of Gulph Creek's Motions individually.

**A.     Gulph Creek's Motion for Summary Judgment against Ralph Boykins**

Gulph Creek moves for summary judgment against Plaintiff Ralph Boykins.  Gulph Creek argues a) that Boykins cannot establish a prima facie case of race discrimination because

he fails to show that he was qualified for the position and that his dismissal did not occur under circumstances that give rise to an inference of unlawful discrimination, and b) Boykins cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating his employment is a pretext for intentional discrimination.  (Defs.' Mot. Summ. J. against Boykins 19–27.)

Boykins responds that he has made a prima facie case of race discrimination because Gulph Creek's choice to retain him after taking over control of the hotel demonstrates qualification and the fact Gulph Creek replaced him with an employee who is white shows circumstances that give rise to an inference of unlawful discrimination.  (Pls.' Resp. Opp'n Mot. Summ. J. 12–13.) [2]  Boykins also argues that he has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because Gulph Creek never advised him of the issues it had with his performance during the course of his employment, that Gulph Creek has presented "shifting reasons" for Boykins's termination, and that the documentation Gulph Creek provides of these performance issues are "totally fraudulent."  (Id. at 13–19.)

### 1.    Boykins cannot establish a prima facie case of race discrimination.

In order to establish a prima facie case of race discrimination under 42 U.S.C. § 1981 a plaintiffs must show that (1) they are members of a protected class; (2) they are qualified for the position; (3) they suffered an adverse employment action; and (4) that the action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently.

---

[2] Plaintiffs did not number the pages in their omnibus Response in Opposition to Gulph Creek's Motions for Summary Judgment. For purposes of citation, the Court will refer to the first page of the body of Plaintiffs' memorandum, which begins "Plaintiffs, by and through their Counsel, oppose Defendant's request for Summary Judgment for reasons stated herein" as page 1, and refer to subsequent pages in the numerical order that corresponds.

Here, it is undisputed that Boykins is a member of a protected class and that he suffered an adverse employment action.  Assuming *arguendo* that Boykins was qualified his for position as he contends, Boykins still cannot make a prima facie case of race discrimination because he cannot make a showing that he was terminated under circumstances that give rise to an inference of unlawful discrimination.  It is true that Boykins has made a showing that his immediate replacement, Adam Friedman, was white.  (Defs.' Mot. Summ. J. against Boykins, Ex. 19, Crowne Plaza Management Directory.)  Yet, in making his argument about the circumstances that give rise to an inference of unlawful discrimination against Boykins on the basis of his race, Boykins ignores the full circumstances of his replacement as restaurant manager— namely, that Gulph Creek employed Friedman for only one day and ultimately hired Jeffrey Webb, who is African-American, to be its restaurant manager.  (Defs.' Mot. Summ. J. against Boykins, Ex. 32, Jeffrey Webb Resume; Peskin Dep. 92:9–14.)

In light of the fact of Webb's hiring, Boykins has not shown that he was terminated under circumstance such as might occur when a similarly situated person not of the protected class is treated differently.  While Boykins need not point to direct evidence that he was terminated on the basis of his race, he must show "some causal nexus between his membership in a protected class and the decision to not [retain] him."  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).  Boykins has presented no evidence from which this Court can draw any inference of a nexus between his termination and his race, particularly in light of Gulph Creek's choice to permanently retain a member of Boykins's protected class in the position from which Boykins was terminated.  Therefore, Boykins fails to make a prima facie case of race discrimination sufficient to overcome Gulph Creek's motion for summary judgment.

      **2.**        **Boykins cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating him was a pretext for discrimination.**

Even assuming *arguendo* that Boykins can establish a prima facie case of race discrimination, Gulph Creek has proffered a legitimate, nondiscriminatory reason for terminating him, and Boykins cannot meet his burden to show that his job performance is a pretext for discrimination.  Boykins makes several assertions to support its argument that Gulph Creek's stated reason for terminating him is a pretext.  First, Boykins maintains that Gulph Creek's failure to advise him of the issues it had with his performance during the course of his employment shows pretext.  (Pls.' Resp. Opp'n Mot. Summ. J. 13–14.)  Gulph Creek, however, was not obliged to inform Boykins of its assessment that his job performance was poor.  It is the long-standing law of the Third Circuit that in cases of employment discrimination brought under 42 U.S.C. § 1981, "managers are not compelled to convey their dissatisfaction to employees" and failure to do so does not show pretext.  Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988).[3]  Therefore, Boykins's purported lack of knowledge of Gulph Creek's assessment of his job performance does not show a pretext for racial discrimination.

Next, Boykins asserts that Gulph Creek has presented "shifting reasons" for Boykins's termination.  (Pls.' Resp. Opp'n Mot. Summ. J. 15.)  It is true that a plaintiff may properly point to "inconsistency in [employer's] explanations" as part of its showing of pretext.  Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986).  However, what Boykins has offered is

---

[3] See also Hood v. Pfizer, Inc., 322 F. App'x 124, 129 (3d Cir. 2009) ("[Defendant employer] claims that [plaintiff employee] received a negative performance review . . . [Plaintiff employee] testified, however, that he was given no warning of his sub-par performance. . . . But this cannot defeat summary judgment, because [defendant employer] had no duty to warn in the first place."); Maidenbaum v. Bally's Park Place, 870 F. Supp. 1254, 1266 (D.N.J. 1994) ("Antidiscrimination laws do not require employers to inform employees of the need for improving their job skills."), aff'd 67 F.3d 291 (3d Cir. 1995).

not an inconsistency.  Boykins alleges in his Response that Gulph Creek informed him that "they were changing the direction of the restaurant."  (Pls.' Resp. Opp'n Mot. Summ. J. at 15.)  In the Plaintiffs' omnibus response, Boykins does not point to any evidence, not even his own testimony, to support this alleged statement.  (Id.)  Even if he had pointed to some proof that Gulph Creek ever made such a statement, Boykins still could not show any inconsistency in its reasoning for terminating Boykins, as terminating Boykins due to poor job performance is not at all inconsistent with "changing the direction of the restaurant" and falls well short of "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'"  Fuentes, 32 F.3d at 765 (quoting Ezold, 983 F.2d 509, 531 (3d Cir. 1992)).  As such, Boykins cannot show a pretext for racial discrimination on the basis of Gulph Creek's "shifting reasons" for his termination.

Next, Boykins alleges that Gulph Creek's legitimate, nondiscriminatory reason for terminating him is a pretext because he alleges that Gulph Creek "cherry-picked" bad guest complaints.  (Pls.' Resp. Opp'n Mot. Summ. J. 15–17.)  However, Boykins only points to one positive guest comment that Boykins "made [her] feel at home" to support its allegation of "cherry-pick[ing]" against Gulph Creek.  (Id. , Ex. 10, Letter from Cynthia Farren.)  Moreover, positive comments of such a general nature do not refute an employer's evaluation of an employee's job performance.  See Creely v. Genesis Health Ventures, Inc., 184 F. App'x 197, 199–200 (3d Cir. 2006) ("General descriptions of [plaintiff employee] as being a 'good employee' and 'good nurse' do not call into question [defendant employer's] observations about [plaintiff employee's] subsequent job performance[.]")  As such, Boykins cannot use this single positive comment from a guest to show that the Court should "disbelieve [Gulph Creek's]

articulated legitimate reasons" or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of Gulph Creek's decision.  Fuentes, 32 F.3d at 764.

Finally, Boykins argues that Gulph Creek's legitimate, nondiscriminatory reason for terminating him is a pretext because the documentation Gulph Creek provides for its assertion, the "Disciplinary Notice Forms," are "totally fraudulent."  (Pls.' Resp. Opp'n Mot. Summ. J. 18–19.)  To support this serious allegation against Gulph Creek, Boykins points to the following: (1) the Disciplinary Notice Form dated July 19, 2009 and attached as Exhibit 33 to Gulph Creek's Motion, bears neither his signature nor that of any manager from Gulph Creek; (2) the fact the July 19, 2009 Form describes a bartender who could not make a "signature drink," a failure for which Boykins maintains he is not responsible; and (3) on the Disciplinary Notice Form dated December 4, 2009, also attached as Exhibit 33, general manager Peskin mistakenly signed his name on the line for "Employee Signature" instead of the line for "Manager's Signature."

Boykins does not say how the omission or misplacement of a signature demonstrates fraud, nor does Boykins offer any support for his assertion that he was not responsible for the bartender's performance in the restaurant that he managed.  To offer such little support for such a grave accusation against Gulph Creek and its counsel amounts to nothing more than speculation, which does not create a sufficient dispute of material fact to defeat summary judgment. Robertson v. Allied-Signal Co., 914 F.2d 360, 382 n.12 (3d Cir. 1990).[4]  To that end, Boykins

---

[4] See also Marten v. Barger, No. Civ.A.09-262, 2011 WL 4472745 (W.D. Pa. Aug. 25, 2011) (holding that a plaintiff accusing a defendant of fabricating evidence that bears some indicia of reliability offered in support of summary judgment without producing some proof beyond his own affidavit is a "bald assertion" and "insufficient to overcome . . . documentary evidence showing" the information contained in Defendant's documentation to be accurate.) (adopted in Marten v. Barger, No. Civ.A.09-262E, 2011 WL 4461261 (W.D. Pa. Sept. 26, 2011)).

cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating him is a pretext for race discrimination on the basis of this fraud accusation.

Boykins has failed to make a prima facie case of race discrimination and he has failed to make a showing that Gulph Creek's stated legitimate, nondiscriminatory reason for terminating him is a pretext for race discrimination.  Accordingly, this Court will grant Gulph Creek's Motion for Summary Judgment against Plaintiff Ralph Boykins.

**B.       Gulph Creek's Motion for Summary Judgment against Michael Fuller**

Gulph Creek moves for summary judgment against Plaintiff Michael Fuller.  Gulph Creek argues a) that Fuller cannot establish a prima facie case of race discrimination because he fails to show that he was qualified for the position, and b) Fuller cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating his employment is a pretext for intentional discrimination.  (Defs.' Mot. Summ. J. against Fuller 18–19.)  Fuller responds that he has made a prima facie case of race discrimination because of his level of experience and Gulph Creek's choice to retain him after taking over control of the Hotel demonstrates qualification.  (Pls.' Resp. Opp'n Mot. Summ. J. 22–24.)  Fuller also argues that he has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because the documents offered in support of its reason do not "contai[n] a scintilla of veracity" and "are plain untrue," that he was not responsible for the events that gave rise to Gulph Creek's reason for his termination, that Gulph Creek never advised him of the issues it had with his performance during the course of his employment, and that Gulph Creek began soliciting applications for his position before the events that gave rise to Gulph Creek's reason for his termination.  (Id. at 24–31.)

Assuming *arguendo*, without making any clear finding, that Fuller has made a made a prima facie case of intentional discrimination, Gulph Creek has articulated a legitimate,

nondiscriminatory reason for terminating Fuller—poor job performance.  (Defs.' Mot. Summ. J. against Fuller 20.)  With Gulph Creek articulating its legitimate, nondiscriminatory reason for terminating Fuller, the burden then shifts to Fuller to show that Gulph Creek's offered reason is a pretext for intentional discrimination.

As discussed above, a plaintiff alleging employment discrimination on the basis of race can show pretext in one of two ways: "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes, 32 F.3d at 764.  Here, Fuller has not made a showing of evidence from which a factfinder could either disbelieve that Gulph Creek terminated Fuller due to poor performance or believe that invidious discrimination was more likely than not a motivating or determinative cause of Gulph Creek's decision to terminate Fuller.

Fuller argues that he has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because the Disciplinary Review Forms it offered in support of its reason do not "contai[n] a scintilla of veracity" and "are plain untrue."  (Pls.' Resp. Opp'n Mot. Summ. J. 25.)  The only evidence that Fuller provides to question their "veracity" are the fact that it was not signed by any manager at the Hotel, Fuller's own assertion that he never saw the Disciplinary Review Form, and the fact that, contrary to the Disciplinary Review Form, Fuller did once document an incident of theft in the Hotel parking lot.  (Id., Ex. 21, Incident Report.)

As to the lack of a signature on the Disciplinary Review Form, Fuller has not offered any reason why the lack of a signature calls into question the veracity of the form itself.  Indeed, the Incident Report that Fuller offers to question the veracity of the Disciplinary Review Form does

not, itself, bear Fuller's signature.  (Id.)  Yet, Fuller posits that his unsigned documentation is credible while Gulph Creek's unsigned documentation of repeated and admitted thefts and break-ins that went undocumented by Fuller does not "contai[n] a scintilla of veracity."  (Id. at 25.)  As discussed above, Fuller must offer more than his own word to substantiate his assertion that Gulph Creek's documentation contains false information.  Otherwise, what Fuller has set forth is nothing more than conjecture insufficient to defeat Gulph Creek's motion for summary judgment on these grounds.  Robertson, 914 F.2d at 382.

Moreover, Fuller claims that he was not, in fact, responsible for the numerous incidents of theft and break-ins on the Hotel's premises, and that when three iPods and a television from the Hotel that Gulph Creek in November 2009, "the entire episode was a 'set-up' to 'get' Mr. Fuller."  (Pls.' Resp. Opp'n Mot. Summ. J. 28.)  To support his accusation against Gulph Creek, Fuller only takes issue with the findings of the outside contractor Gulph Creek hired to investigate the theft.  (Id. at 28–29.)  As the Third Circuit has previously instructed, to meet its "difficult burden" of showing pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Fuentes 32 F.3d at 765.  "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'"  Id. (quoting Ezold, 983 F.2d at 531).  Once again, Fuller offers no evidence to substantiate his accusation nor anything from which a reasonable factfinder could find Gulph Creek's reason for terminating Fuller due to poor job performance is "unworthy of credence."  Id.

Fuller also argues that he has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because Gulph Creek never advised him of the issues it had with his performance during the course of his employment. As noted above, "managers are not compelled to convey their dissatisfaction to employees" and failure to do so does not show pretext. Healy, 860 F.2d at 1216. Moreover, Fuller admits that he was aware of the numerous incidents of theft and break-ins that led to his termination, when he concedes that "break-ins were an issue." (Pls.' Resp. Opp'n Mot. Summ. J. 26.) Therefore, Fuller's lack of knowledge of Gulph Creek's assessment of his job performance does not show a pretext for racial discrimination.

Finally, Fuller argues that he has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because Gulph Creek began soliciting applications for his position before the events that gave rise to Gulph Creek's reason for his termination. (Pls.' Resp. in Opp'n at 29–31.) This simply does not show pretext for numerous reasons, and two in particular. First, the timing of Gulph Creek's choice to advertise the directory of security position is not the sort of fact that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'" Fuentes 32 F.3d at 765 (quoting Ezold, 983 F.2d at 531). Also, the notion that Gulph Creek sought applicants prior to the theft of the iPods is not supported by the record. Fuller points to the date of November 25, 2009 as the date that the iPods and television went missing. (Pls.' Resp. Opp'n Mot. Summ. J. 29.) This was the so-called "straw that broke the camel's back" for Gulph Creek in its decision to terminate Fuller. (Defs.' Mot. Summ. J. against Fuller 12.) Gulph Creek first advertised the vacancy on December 7, 2009. (Peskin Dep. 231:15–232:6.) This sequence of events is

consistent with Gulph Creek's assertion that the theft of the iPads and television was the "last straw" and lacking in any basis on which a factfinder could rationally find that Gulph Creek's stated reason for terminating Fuller "unworthy of credence."

Fuller has failed to make a showing that Gulph Creek's stated legitimate, nondiscriminatory reason for terminating him is a pretext for race discrimination. Accordingly, this Court will grant Gulph Creek's Motion for Summary Judgment against Plaintiff Michael Fuller.

**C.    Gulph Creek's Motion for Summary Judgment against Gloria Holland**

Gulph Creek also moves for summary judgment against Plaintiff Gloria Holland. Gulph Creek does not contest whether Holland has made a prima facie case of race discrimination. Rather, Gulph Creek argues that Holland cannot establish that its legitimate, nondiscriminatory reason for terminating her—namely, poor job performance—was a pretext for discrimination. (Defs.' Mot. Summ. J. against Holland 18–24.) Holland counters that she can establish pretext because she alleges that she never learned of Gulph Creek's assessment of her performance during her employment, that Gulph Creek "provide[d] fraudulent information" to support its reason, and that the events described in the documentation Gulph Creek "never happened" and are "totally untrue." (Pls.' Resp. Opp'n Mot. Summ. J. 35–39.)

Assuming *arguendo*, once again making no clear finding, that Holland has made a made a prima facie case of intentional discrimination, Gulph Creek has articulated a legitimate, nondiscriminatory reason for terminating Holland—poor job performance. (Defs.' Mot. Summ. J. against Fuller 20.) With Gulph Creek articulating its legitimate, nondiscriminatory reason for terminating Holland, the burden then shifts to Holland to show that Gulph Creek's offered reason is a pretext for intentional discrimination.

Holland argues that she has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because she never learned of Gulph Creek's criticisms of her performance as they pertained to banquet billing procedures, unreported revenue, and on-the-job behavior until after her termination.  (Pls.' Resp. Opp'n Mot. Summ. J. 35–39.)  Gulph Creek was under no obligation to tell Holland of its assessment that her job performance was poor.  As discussed in greater detail above, "managers need not regularly apprise employees of their poor job performance."  Healy, 860 F.2d at 1216.  Therefore, Holland's purported lack of knowledge of Gulph Creek's assessment of her job performance does not show a pretext for racial discrimination.

Holland also argues that she has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because on the Disciplinary Notice Forms dated June 8, 2009, July 17, 2009, July 29, 2009, General Manager Peskin's signature is either missing or written on the line for "Employee's Signature" rather than "Manager's Signature."  (Pls.' Resp. Opp'n Mot. Summ. J. 35–37.)  Based on the placement of Peskin's signature on these forms, combined with Holland's claim that she had never seen the forms prior to the present litigation, Holland alleges that the information documented in the forms about her poor performance is "fraudulent."  (Id. at 37.)  Holland does not offer any independent proof of her assertion that Gulph Creek is attempting to perpetrate a fraud on this Court.  As such, Holland's bald accusation is unsubstantiated and cannot withstand Gulph Creek's Motion for Summary Judgment.  To that end, Holland cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating her is a pretext for race discrimination on the basis of her allegation that the Disciplinary Review Forms are "fraudulent."

Finally, Holland argues that she has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because its criticisms of Holland's performance that Gulph Creek as documented in its October 29, 2009 memorandum are "fabricated" and "totally untrue." (Pls.' Resp. Opp'n Mot. Summ. J. 39.)  To support her claim, all Holland offers to support its claim that Gulph Creek "fabricated" the information contained in its October 29, 2009 memorandum is her own affidavit.  (Pls.' Resp. Opp'n Mot. Summ. J., Ex. 33, Affidavit of Gloria Holland ("Holland Aff.").)  Generally, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002)).  However, the inquiry is not "whether Plaintiff has relied solely on his own testimony to challenge the Motions, but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature." Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 549–50 (E.D. Pa. 2012).

Here, in addition to the testimony of General Manager Peskin, Gulph Creek offers three separate Disciplinary Notice Forms that were written contemporaneously with Holland's employment, and one memorandum composed within ten days of Holland's termination that document specific criticisms relating to Holland's performance and behavior on the job. Conversely, all Holland has offered to counter Gulph Creek's documentation of its criticisms of her performance is an affidavit that amounts to a blanket denial.  Holland's affidavit is not only self-serving, but also insufficient for a rational factfinder to credit her testimony.  To that end, Holland cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating

her is a pretext for race discrimination because of her assertion that Gulph Creek's criticisms of

her performance are "fabricated."

Holland has failed to make a showing that Gulph Creek's stated legitimate,

nondiscriminatory reason for terminating her is a pretext for race discrimination.  Accordingly,

this Court will grant Gulph Creek's Motion for Summary Judgment against Plaintiff Gloria

Holland.

**D.      Gulph Creek's Motion for Summary Judgment against Denise Taliaferro**

Gulph Creek moves for summary judgment against Plaintiff Denise Taliaferro.  Gulph

Creek argues that it is entitled to summary judgment because Taliaferro cannot establish a prima

facie case of race discrimination, and Taliaferro cannot establish that its legitimate,

nondiscriminatory reason for terminating her—namely, that it eliminated her position to reduce

costs and increase efficiency—was a pretext for discrimination.  (Defs.' Mot. Summ. J. against

Taliaferro 2–10.)  Taliaferro counters that she has established a prima facie case, and that she can

establish pretext because Gulph Creek provided a "a total fabrication" to support its reason, and

that Gulph Creek has employed "shifting reasons" for terminating Taliaferro.  (Pls.' Resp. Opp'n

Mot. Summ. J. 41–48.)

The Court again need not make any finding as to whether Taliaferro has made a prima

facie case of race discrimination. Assuming *arguendo* that Taliaferro has made a made a prima

facie case of intentional discrimination, Gulph Creek has articulated a legitimate,

nondiscriminatory reason for terminating Taliaferro—cost reduction.  (Defs.' Mot. Summ. J.

against Fuller 20.)  With Gulph Creek articulating its legitimate, nondiscriminatory reason for

terminating Taliaferro, the burden shifts to Taliaferro to show that Gulph Creek's offered reason

is a pretext for intentional discrimination.

25

As discussed above, a plaintiff alleging employment discrimination on the basis of race can show pretext in either of two ways.  Here, Taliaferro has not made a showing of evidence from which a factfinder could either disbelieve that Gulph Creek terminated Taliaferro due to cost reduction or believe that invidious discrimination was more likely than not a motivating or determinative cause of Gulph Creek's decision to terminate Taliaferro.

Taliaferro argues that she has shown that Gulph Creek's legitimate, nondiscriminatory reason pretext because the documentation it has provided in support of its reason is "a total fabrication."  (Pls.' Resp. Opp'n Mot. Summ. J. 46.)  For the same reasons stated in the Court's consideration of Gulph Creek's Motions against the other Plaintiffs in the present case, Taliaferro offers no evidence on which to base her allegation of "fabrication" against Gulph Creek and does not create a dispute of material fact.  Moreover, the documentation that Taliaferro calls a "fabrication," speak to Taliaferro's performance as an employee, and do not bear on Gulph Creek's stated reason for her termination—namely, cost reduction.  To that end, Taliaferro cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating her is a pretext for race discrimination on the basis of her accusation of "fabrication."

Taliaferro also argues that she has shown that Gulph Creek's legitimate, nondiscriminatory reason is a pretext because Gulph Creek has provided "shifting reasons" for terminating her.  (Pls.' Resp. Opp'n Mot. Summ. J. 47–48.)  A plaintiff may show an "inconsistency in [employer's] explanations" as part of its case for a finding of pretext.  <u>Waddell</u>, 799 F.2d at 73.  However, there is nothing in the record to indicate that Gulph Creek has ever advanced a reason for terminating Taliaferro other than cost reduction.  Gulph Creek's submission of Disciplinary Review Forms to the EEOC and to this Court as part of its defense does not "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'" <u>Fuentes</u>, 32 F.3d at 765 (quoting <u>Ezold</u>, 983 F.2d at 531).  Therefore, Taliaferro cannot show that Gulph Creek's legitimate, nondiscriminatory reason for terminating her is a pretext for race discrimination on the basis of Gulph Creek offering "shifting reasons" for her termination.

Taliaferro has failed to make a showing that Gulph Creek's stated legitimate, nondiscriminatory reason for terminating her is a pretext for race discrimination.  Accordingly, this Court will grant Gulph Creek's Motion for Summary Judgment against Plaintiff Denise Taliaferro.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant Gulph Creek's Motions for Summary Judgment against Plaintiffs Ralph Boykins, Michael Fuller, Gloria Holland, and Denise Taliaferro.

An appropriate order follows.